UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**UNEQUAL TECHNOLOGIES COMPANY,**

        **Plaintiff,**

vs.                 **1:23-CV-261**
                      **(MAD/ML)**

**DYNAMIC APPAREL DESIGN, LLC,** *doing business as* **Mercury Screen Printing,**

        **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **KLEHR HARRISON HARVEY BRANZBURG, LLP**<br>1835 Market Street – Suite 1400<br>Philadelphia, Pennsylvania 19103<br>Attorneys for Plaintiff | **MATTHEW J. MCDONALD, ESQ.** |
| **DUCHARME CLARK LLP**<br>646 Plank Road, Suite 204<br>Clifton Park, New York 12065<br>Attorneys for Defendant | **JOHN B. DUCHARME, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  Plaintiff commenced this action on February 27, 2023, asserting claims of breach of contract, account stated, unjust enrichment, and conversion. *See* Dkt. No. 1. Following an unsuccessful mediation, the attorneys for the parties continued settlement discussions and on April 9, 2024, reached a settlement in principal.

  Currently before the Court is Plaintiff's motion to enforce the parties' settlement agreement. *See* Dkt. No. 51.

### II. BACKGROUND

This case arises from Defendant's alleged failure to pay approximately $487,000 for lacrosse shoulder pads. It is undisputed that Plaintiff delivered the pads to Defendant, in part, and directly to Defendant's customers, in part. The primary factual dispute between the parties is whether Defendant actually ordered approximately 6,220 shoulder pads from Plaintiff.

Following commencement of this action, the parties' attorneys have spent a considerable amount of time attempting to negotiate a resolution to the parties' dispute. These settlement proposals have entailed Defendant offering to return some or all of the shoulder pads to Plaintiff in conjunction with paying Plaintiff some money in an amount dependant on the number of pads returned.

In February 2024, the parties participated in mediation with the Honorable Randolph F. Treece without success. *See* Dkt. No. 28. In April 2024, the parties spent more time attempting to negotiate a resolution to this dispute.

On April 9, 2024, the parties' attorneys reached a settlement during a telephone call. Following the telephone call, Plaintiff's counsel sent an email to Defendant's counsel setting forth the broad terms of the negotiated settlement, which Plaintiff's counsel indicated would "be memorialized in a more fulsome written agreement." Dkt. No. 51-2 at 5. According to the April 9, 2024 email, the parties agreed to the following terms:

> 1. Mercury to make a payment of $425,000 by wire transfer to Klehr Harrison's trust account on or before April 19.
>
> 2. Mercury to ship 500 Unequal lacrosse shoulder pads to Plaintiff's headquarters in Glen Mills, PA. Unequal to designate the sizes of the pads in writing. **The shipment must be made within 10 business days of execution of a settlement agreement**, or Unequal's designation of sizes, whichever is later. Unequal will have the right to inspect the pads for mold or other damage that renders them unsalable, or otherwise requiring them to be sold at a discount, and provide written notice of any such damage within 30 calendar days of receipt. If any pads are damaged, then Mercury

2

must ship replacement pads of the same sizes as the damaged pads within 5 business days of receiving written notice from Plaintiff of the damaged pads. Mercury's failure to either timely make the initial shipment, or timely ship replacement pads, will increase the total settlement by $75 for each shoulder pad that Mercury fails to timely replace. If the replacement pads are also damaged, then the settlement shall be increased by $75 per damaged replacement pad. If any additional sums are due, it shall be through a second wire made not less than 30 calendar days after Unequal provides written notice of its entitlement to an increased settlement amount.

3. The litigation will not be dismissed until full performance by Mercury, including the expiration of Unequal's review period and/or Mercury makes payment for any undelivered or damaged pads as applicable and set forth above.

4. **In the event Mercury breaches the settlement agreement after execution**, Unequal will have the option to either revoke the settlement agreement and pursue its full claims, crediting against its damages any amount already paid, or seek to enforce the settlement agreement's terms.

5. The prevailing party to recover its legal fees in any dispute arising from a breach of the settlement agreement, including in any litigation concerning Unequal's original claims if Unequal revokes acceptance.

6. The parties agree to notify the Court, through a joint letter, **that a settlement in principle has been reached. The parties will therefore request that the Court adjourn all deadlines and hearings while the parties memorialize the agreement in writing**. The parties will further request that the Court does not dismiss the case until the parties fully perform the settlement agreement, which may take several months.

7. Plaintiff's counsel to prepare the initial draft of the settlement agreement.

8. Defendant's counsel to prepare the initial draft of the letter to the Court.

Please confirm this reflects our understanding of the settlement terms so that we may begin drafting the relevant documentation.

Dkt. No. 51-2 at 5-6 (emphasis added).

On April 9, 2024, the parties submitted a joint letter to Magistrate Judge Lovric reporting that they "reached a settlement in principle" and that they were "in the process of preparing a settlement agreement setting forth the terms of that agreement for the parties' execution." Dkt. No. 35. On April 10, 2024, Magistrate Judge Lovric issued a text order indicating that "the parties settled this matter in principle" and he gave them until June 10, 2024, to either dismiss the case or file a status report if the case fails to settle. *See* Dkt. No. 36.

On April 11, 2024, Plaintiff's counsel sent Defendant's counsel an email which attached the first proposed written settlement agreement, which changed the terms of the parties' "agreement in principle" by, among other things, accelerating some of the deadlines for performance and expressly conditioned its binding effect on "**final client approval (and execution)**." Dkt. No. 43 at 12 (emphasis added).

On April 12, 2024, Defendant's counsel sent Plaintiff's counsel an email setting forth Defendant's requested modifications to the proposed agreement. *See id.* at 14. Notably, Defendant's counsel proposed a payment date of "**within 30-days of the full execution of the agreement**" instead of the April 19 date original discussed by the parties. *See id.* at 14 (emphasis added). Defendant also indicated that it would prefer to return 500 large shoulder pads to Plaintiff, rather than the sizes specified by Plaintiff. *See id.* Plaintiff's counsel responded later that day rejecting Defendant's requested modifications, and included a second, revised, proposed written settlement agreement, which Plaintiff's counsel expressly noted that his client had yet to review it "**and therefore the proposal is subject to approval by my client.**" *Id.* at 16 (emphasis added).

On April 17, 2024, Plaintiff's counsel sent Defendant's counsel an email in which he conveyed that Plaintiff "intends to **hold the settlement offer/agreement open through Friday**.

4

However, if we do not receive a fully executed agreement by Friday, then the agreement shall be automatically withdrawn, the **offer** revoked," and that they would be asking the Court to restore the motion and hearing deadlines. *See id.* at 18 (emphasis added).

On April 19, 2024, Defendant's counsel sent Plaintiff's counsel an email which set forth Defendant's refusal to agree to Plaintiff's proposed modified agreement, and set forth alternate settlement terms. *See id.* at 20. Plaintiff's counsel responded with an email again rejecting Defendant's requested modifications. *See id.* at 22. The email from Plaintiff's counsel included a third, further revised, proposed written settlement agreement, which again stated that it was still subject to Plaintiff's approval and that they "reserve the right to make additional changes." *Id.* Later that day, Plaintiff's counsel sent another email stating that Plaintiff instructed him to advise Defendant that he would "ask the Court to reinstate the motion practice and hearings unless we have a signed agreement today." *Id.* at 24. Defendant's counsel responded by advising Plaintiff's counsel that Defendant would not be signing the agreement that day and proposed alternate settlement terms, which Plaintiff again rejected. *See id.* at 26, 28.

On April 23, 2024, Defendant's counsel sent Plaintiff's counsel an email which set forth Defendant's refusal to agree to Plaintiff's terms. *See id.* at 30. Plaintiff's counsel responded with an email stating that he was instructed to file a motion seeking to enforce the settlement or restoring the hearing and other deadlines to the calendar. *See id.* at 32.

On April 25, 2024, Plaintiff filed a pre-motion letter requesting permission to file a motion to enforce the parties' settlement agreement or, in the alternative, requesting that the Court reset the deadlines for the parties to proceed with this litigation. *See* Dkt. No. 37. In response, Magistrate Judge Lovric reset the deadlines for the parties to proceed with this litigation. *See* Dkt. No. 38.

### III. DISCUSSION

**A.     Standard of Review**

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (citations omitted).  A settlement agreement is a "contract that is interpreted according to general principles of contract law." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).  "A 'motion to enforce a settlement agreement is fundamentally a claim for breach of contract.'" *United States v. Prevezon Holdings, Ltd.*, 289 F. Supp. 3d 446, 450 (S.D.N.Y. 2018) (quoting *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015)). When a court determines that a settlement agreement was in fact reached, that agreement must be binding, and "it is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made." *Omega*, 432 F.3d at 445; *see also Murphy v. Inst. of Int'l Educ.*, No. 19-cv-1528, 2020 WL 6561603, *4 (S.D.N.Y. July 27, 2020) (citations omitted).

Under New York law, an enforceable settlement agreement requires "an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004).  The parties must be in agreement "on all essential terms," *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 372 (2d Cir. 2003) (citation omitted), which consists of "all the issues perceived to require negotiation." *Brown v. Cara*, 420 F.3d 148, 153 (2d Cir. 2005) (citation omitted).  "When a preliminary agreement is reduced to a writing signed by the parties or their representatives, the plain language of the agreement is the best evidence of the parties' intent." *Wang v. Int'l Bus. Machs. Corp.*, No. 11-cv-02992, 2014 WL 6645251, *3 (S.D.N.Y. Oct. 7, 2014) (citation omitted); *see also Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322

(2d Cir. 1997). This includes agreements written in an email. *See Green v. N.Y.C. Transit Auth.*, No. 15-CV-08204, 2022 WL 2819738, *2 (S.D.N.Y. May 10, 2022) (quoting *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04-CV-1621, 2005 WL 1377853, *5-10 (S.D.N.Y. June 9, 2005)); *see also Elliot v. City of N.Y.*, No. 11-CV-7291, 2012 WL 3854892, *2 (S.D.N.Y. Sept. 5, 2012) (finding an executed term sheet and email from defense counsel confirming agreement was sufficient to create a binding agreement). "The intention of the parties on this issue is a question of fact, to be determined by examination of the totality of the circumstances." *Ciaramella*, 131 F.3d at 322. A plaintiff bringing a breach of contract claim bears the burden of proving the existence of a contract by a preponderance of the evidence. *Pisani v. Westchester Cty. Health Care Corp.*, 424 F. Supp. 2d 710, 719 (S.D.N.Y. 2006).

"Whether a district court should apply federal or state law in order to decide a motion to enforce a settlement has not yet been resolved by Court of Appeals for the Second Circuit." *Green*, 2022 WL 2819738, at *2 (citing *Powell v. Omnicom*, 497 F.3d 124, 129 n.1 (2d Cir. 2007)). However, the Second Circuit has noted that "there is 'no material difference' between New York law and federal common law on this issue." *Id.* (quoting *Ciaramella*, 131 F.3d at 322); *see also Figueroa v. N.Y.C. Dep't of Sanitation*, 475 Fed. Appx. 365, 366 (2d Cir. 2012) (same).

The Second Circuit has "articulated several factors that help determine whether the parties intended to be bound in the absence of a document executed by both sides." *Winston*, 777 F.2d at 80. The court considers:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

7

*Ciaramella*, 131 F.3d at 323 (citing *Winston*, 777 F.2d at 80). "No single factor is decisive, but each provides significant guidance." *Id.* (citation omitted). "[T]he analysis ultimately hinges on the parties' intent demonstrated through their objective communications and conduct." *In re Motors Liquidation Co.*, 580 B.R. 319, 344 (Bankr. S.D.N.Y. 2018).

### 1. *Express Reservation of the Right Not to be Bound*

"The first factor, the language of the agreement, is 'the most important.'" *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 549 (2d Cir. 1998) (quoting *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989)); *see also Hernandez v. Fresh Diet Inc.*, No. 12-CV-4339, 2017 WL 4838328, *3 (S.D.N.Y. Oct. 25, 2017). The Second Circuit has held that "where 'there is a writing between the parties showing that [one party] did not intend to be bound ... a court need look no further than the first factor.'" *Kaczmarcysk v. Dutton*, 414 Fed. Appx. 354, 355 (2d Cir. 2011) (quoting *RKG Holdings, Inc. v. Simon*, 182 F.3d 901, 901 (2d Cir. 1999)).

Here, the first factor heavily favors Defendant. In his April 11, 2024 email, Plaintiff's counsel changed some of the terms of the parties' "agreement in principle" and expressly conditioned its binding effect on "**final client approval (and execution).**" Dkt. No. 43 at 12 (emphasis added). This alone strongly favors denying Plaintiff's motion.

In addition to this express language, courts also consider whether the particular facts and circumstances of the case demonstrate an implied reservation of the right not to be bound until the execution of a written agreement. *See Peters*, 2022 WL 1126751, at *3. As set forth in more detail above, the emails exchanged by the parties' attorneys contain language which is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement. In the April 9, 2024, email setting forth the agreement in principle, language was used that clearly

contemplated the execution of a written settlement agreement. The email begins by acknowledging that the parties' agreement would "be memorialized in a more fulsome written agreement." Dkt. No. 51-2 at 5. The terms also included that Defendant would not be required to return to Plaintiff 500 shoulder pads until "10 business days of execution of a settlement agreement" and what Plaintiff's remedies shall be if Defendant "breaches the settlement agreement after execution." *Id.* at 5-6. Such language clearly demonstrates the fact that both parties did not intend to be bound until a formal, written agreement was agreed upon and executed. *See Finders v. BK 19 Inc.*, No. 19-cv-11802, 2024 WL 1300067, *3-4 (S.D.N.Y. Mar. 26, 2024). Additionally, in his April 8, 2024, email to Defendant's counsel setting forth proposed terms, Plaintiff's counsel expressly stated as follows: "**For avoidance of doubt, this settlement offer is conditioned on execution of a final settlement agreement.**" Dkt. No. 51-2 at 7 (emphasis added). This language clearly demonstrates that Plaintiff's counsel himself did not consider such preliminary agreements binding, contrary to the position he has taken in the present motion.

     Moreover, each version of the proposed settlement agreement contained a merger clause, which specifically references written execution, and that the written agreement "sets forth the entire agreement between the Parties, and fully supersedes any and all prior agreements or understandings, whether oral or written, between the Parties pertaining to actual or potential claims[.]" Dkt. No. 51-2 at 15. Such language is "persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Kaczmarcysk*, 414 Fed. Appx. at 355 (citing *Ciaramella*, 131 F.3d at 324). Finally, this conclusion is also supported by the fact that both parties continued to make modifications to the proposed agreement in the days

following April 9, including Plaintiff's counsel who conditioned the binding effect of any agreement on "**final client approval (and execution).**" Dkt. No. 43 at 132 (emphasis added).

Accordingly, the Court finds that the language in the agreement, together with the parties' written communications, strongly demonstrates that the agreement would not be binding barring execution by all parties. Although finding that this factor favors invalidity is enough to deny Plaintiff's motion to enforce settlement, the balance of the other factors also bolsters this conclusion.

### 2. Partial Performance

This factor considers "whether one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement." *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75-76 (2d Cir. 1984). "Partial performance requires some actual performance of the contract" and a party "must have conferred something of value upon [the other] which [was] accepted." *P.A. Bergner & Co. v. Martinez*, 823 F. Supp. 151, 157 (S.D.N.Y. 1993). "Courts have considered various factors that indicate partial performance, including payment of at least some part of the settlement amount and mutual cessation of litigation activities." *Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F. Supp. 3d 262, 268 (S.D.N.Y. 2022).

Here, Plaintiff argues that it "partially performed, in reliance on the agreement, by agreeing to the adjournment of pending deadlines and an associated evidentiary hearing ... , by securing such adjournment from the Court ... and by drafting and negotiating the terms of the formal document." Dkt. No. 51-1 at 10. The Court disagrees that this conduct alone supports a finding of partial performance.

Initially, neither party took any meaningful steps to implement any of the terms of the proposed settlement agreement. It is true that Magistrate Judge Lovric stayed all deadlines in this matter on April 10, 2024, upon receipt of the parties' joint letter motion informing the Court that they had "reached a settlement in principle." Dkt. No. 36. This stay, however, was lifted on April 26, 2024, after the parties informed the Court that the settlement discussions had broken down. *See* Dkt. No. 38. This exceedingly brief stay of deadlines does not warrant a finding of partial performance. *See Peters v. Huttel*, No. 15-cv-9274, 2022 WL 1126751, *3 (S.D.N.Y. Apr. 15, 2022) (holding that "[m]erely informing the Court of the agreement is not partial performance") (citation omitted); *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 175 (E.D.N.Y. 2006) (holding there was no partial performance where the defendants' counsel emailed the mediator and stated he or she could inform the court of the settlement).

Accordingly, the Court finds that this factor also weighs against finding that an enforceable agreement existed between the parties.

### 3. No Open Material Terms

Preliminary agreements can create binding obligations "when the parties agree on all the points that require negotiation (including whether to be bound) but agree to memorialize their agreement in a more formal document." *Adjustrite*, 145 F.3d at 548. "A settlement in principle is not final where material terms that form part of the plaintiff's consideration for dropping her legal claims are not agreed upon." *Xie*, 632 F. Supp. 3d at 269. Minor or technical changes are relevant against finding a contract binding "only if they show there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing 'satisfactory to both sides in every respect.'" *Powell*, 497 F.3d at 130 (quoting *Winston*, 777 F.2d at 82-83).

11

In its motion, Plaintiff simply argues that "all material terms, indeed all terms, were agreed upon, supporting enforcement." Dkt. No. 51-1 at 10. The Court disagrees.

The documentary evidence before the Court establishes that there were points of disagreement between the parties with respect to the settlement terms, including the payment terms, the sizes of the lacrosse shoulder pads to be returned by Defendant to Plaintiff, and the selection of the venue in the event of future disputes. *See* Dkt. No. 43 at 14. As noted above, Plaintiff's counsel revised the initial written settlement agreement which he expressly conditioned on Plaintiff's approval, which he had not yet received. *See id.* at 16. When Defendant did not agree to the revisions made, Plaintiff's counsel again reviewed the proposed written settlement agreement, which he continued to expressly condition on Plaintiff's approval and even "reserve[d] the right to make additional changes." *Id.* at 20, 22. Again, Defendant did not agree to the revisions made by Plaintiff and proposed different settlement terms. *See id.* at 26. Plaintiff's counsel rejected Defendant's proposal and negotiations ended without a mutually agreed on, executed settlement agreement. *See id.* at 28, 32. The Court finds that this evidence demonstrates that there were open material terms. *See Winston*, 777 F.2d at 82-83 (finding that the parties' continual redrafting of the agreement indicated that the "changes made must [have been] deemed important enough to the parties to have delayed final execution and consummation of the agreement").

Accordingly, this factor also weighs against granting Plaintiff's motion to enforce the settlement agreement.

### 4. Type of Contract

The final *Winston* factor is whether the agreement at issue is the type of agreement that would normally be reduced to writing. *See Winston*, 777 F.2d at 83. "Settlements of any claim

12

are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326. The complexity of the terms of the agreement and the period of time covered by the settlement are considerations in analyzing this factor. *See Oparah v. N.Y.C. Dep't of Educ.*, No. 12-cv-8347, 2015 WL 4240733, *7 (S.D.N.Y. July 10, 2015); *see also Ciaramella*, 131 F.3d at 326 (citation omitted).

Here, the evidence before the Court demonstrates that the settlement terms the parties were negotiating were sufficiently complex such that a writing would be expected. Plaintiff was demanding that Defendant pay $425,000, which is not an insignificant amount. *See Winston*, 777 F.2d at 83 (noting that "the $62,500 at issue is not a trifling amount"). The procedure Plaintiff sought to implement for the return and inspection of the shoulder pads was relatively detailed and complex. *See* Dkt. No. 51-2 at 12-13. The agreement also contained provisions that are typically placed in writing such as a "Mutual General Release of Claims" provision, a "Non-Disclosure/Confidentiality of Agreement" provision, and a "Governing Law" provision. *See id.* at 13, 15-16. In cases where the alleged agreement include such provisions, the expectation that the agreement be in writing and formally executed "simply cannot be a surprise to anyone." *Ciaramella*, 131 F.3d at 326 (citation omitted).

The Court also notes that N.Y. C.P.L.R. § 2104 requires that an agreement to settle litigation in New York must be either made on the record in open court or reduced to a written agreement that is signed by the parties. The Second Circuit has not ruled on the issue of whether Section 2014 applies in federal courts sitting in diversity applying New York law. *See In re Diocese of Rochester*, ___ B.R. ___, 2024 WL 4438724, *10 (Bankr. W.D.N.Y. 2024) (citation omitted). "However, District Courts in the Second Circuit have held that CPLR 2104 is at least relevant in applying the fourth *Winston* factor." *Id.* (citations omitted). Here, the settlement

13

agreement was reduced to writing but was signed by neither party and the agreement to settle this case was not made on the record in open court.

Accordingly, the Court finds that the fourth *Winston* factor weighs against enforcement of the settlement agreement. In considering the totality of the circumstances, Plaintiff has failed to establish that there was an enforceable settlement and the motion to enforce must be denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion to enforce the settlement agreement (Dkt. No. 51) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 15, 2024
Albany, New York

Mae A. D'Agostino
U.S. District Judge