UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**UNEQUAL TECHNOLOGIES COMPANY,**

                              **Plaintiff,**

    vs.                                               1:23-CV-261
                                                          (MAD/ML)

**DYNAMIC APPAREL DESIGN, LLC,** *doing business as* **Mercury Screen Printing,**

                              **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **KLEHR HARRISON HARVEY BRANZBURG, LLP**<br>1835 Market Street – Suite 1400<br>Philadelphia, Pennsylvania 19103<br>Attorneys for Plaintiff | **MATTHEW J. MCDONALD, ESQ.** |
| **DUCHARME CLARK LLP**<br>646 Plank Road, Suite 204<br>Clifton Park, New York 12065<br>Attorneys for Defendant | **JOHN B. DUCHARME, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff commenced this action on February 27, 2023, asserting claims of breach of contract, account stated, unjust enrichment, and conversion. *See* Dkt. No. 1. Following an unsuccessful mediation, the attorneys for the parties continued settlement discussions and on April 9, 2024, reached a settlement in principal. Thereafter, the Court was informed that the parties were unable to agree on the principal terms of the settlement and this litigation was resumed.

    Currently before the Court is Plaintiff's motion for summary judgment. *See* Dkt. No. 56.

## II. BACKGROUND

**A.     The Parties and Initial Meeting**

Plaintiff Unequal Technologies Company ("Plaintiff") is a Pennsylvania corporation that manufactures protective equipment, including, among other things, lacrosse shoulder pads. *See* Dkt. No. 57-7 at ¶ 1. Plaintiff's sports equipment customers range from local sports grounds and high schools to professional teams and players. *See id.* Robert Vito ("Vito") is Plaintiff's cofounder, Chief Executive Officer, and Chairman of the Board of Directors. *See id.* at ¶ 2. Kyle Cunningham ("Cunningham") is Plaintiff's cofounder and Chief Financial Officer. *See id.* at ¶ 3. To assist with the sale of its products, Plaintiff employs salespeople on a commission basis, including Brian Dougherty ("Dougherty") and Todd Schreiner ("Schreiner"). *See id.* at ¶ 4.

Defendant Dynamic Apparel Design, LLC ("Defendant") is a New York limited liability company which, among other things, screen prints apparel and sells hard goods, including sports equipment. *See id.* at ¶ 5. Jeffrey Serge ("Serge") is Defendant's owner, founder, and President. *See id.* at ¶ 6.

Dougherty began working as an independent sales representative for Plaintiff in or around 2022. *See* Dkt. No. 57-5 at 19-20.[1] Dougherty would receive a commission of five percent of the sales that he generated for Plaintiff. *See id.* at 20-21. Dougherty was inexperienced as a sales representative and received no training from Plaintiff regarding sales, its policies, obtaining credit applications, purchase orders, or even how to confirm a sale to a customer. *See id.* at 20-24.

Schreiner was Dougherty's friend who did not have a commission agreement with Plaintiff. *See* Dkt. No. 57-3 at 18-19. Schreiner was even more inexperienced as a sales

---

[1] All citations to page numbers for documents in the record are to the page numbers generated by the Court's electronic filing system, CM/ECF.

representative of Plaintiff than Dougherty, having never worked for Plaintiff prior to February 2022, and also never receiving training from Plaintiff regarding sales, its policies, obtaining credit applications, purchase orders, or even how to confirm a sale to a customer. *See id.*

On February 28, 2022, Dougherty and Schreiner traveled to Defendant's facilities in Albany and they met with Serge for the first time. *See* Dkt. No. 57-7 at ¶ 7; Dkt. No. 57-1 at ¶ 10. During this meeting, the parties discussed Defendant potentially purchasing an order of lacrosse should pads from Plaintiff. *See* Dkt. No. 57-7 at ¶ 8. During the meeting, Dougherty and Schreiner showed Serge Plaintiff's lacrosse should pads and tried to explain Plaintiff's new technology. *See* Dkt. No. 57-3 at 27-29; Dkt. No. 57-5 at 31-33. Schreiner described it as, "[a] lot of it was just general lacrosse talk. But I would say primarily the discussion was on technology. Once ... we kind of got through the technology part, we talked about possibly bringing in should pad firms, kind of how to move forward." Dkt. No. 57-3 at 30. Neither Schreiner nor Dougherty kept any notes regarding what transpired during this meeting. *See id.*; *see also* Dkt. No. 57-5 at 33.

During the meeting, Serge expressed to Dougherty and Schreiner that Defendant had some interest in purchasing lacrosse shoulder pads for resale to Defendant's lacrosse customers. At this point, the parties' significantly dispute what transpired during the February 28, 2022 meeting, and the days immediately following.

**B.   Plaintiff's Position**

Plaintiff contends that, during the February 28 meeting, the parties discussed an order for lacrosse shoulder pads from Plaintiff and that "[a]n order for 8,000 shoulder pads was nearly finalized during the meeting." Dkt. No. 56-2 at ¶ 8. Plaintiff further alleges that, by the afternoon of March 1, all essential terms were agreed to and that Vito confirmed the order terms with

3

Dougherty through text message. *See id.* at ¶ 9 (citing Dkt. No. 56-7). Plaintiff further alleges that, on March 1, 2022, at 3:30 p.m., Cunningham confirmed the order with Serge by email, copying Dougherty and Schreiner. *See id.* at ¶ 10. Plaintiff contends that Cunningham's email set forth all essential elements of the parties' agreement concerning Defendant's purchase: (1) the price of the shoulder pads; (2) the number of shoulder pads (8,000); (3) payment by Defendant within sixty days; (4) that Defendant would pay for shipping and any damage to the goods that may occur during transit; and (5) that Defendant would be permitted to select the size breakdown of the pads to be shipped. *See* Dkt. No. 56-2 at ¶ 11. Serge responded to Cunningham's email thirty-four minutes later on March 1, 2022, asking Schreiner to provide Cunningham with the size breakdown that they discussed for the order. *See id.* at ¶ 12 (citing Dkt. No. 56-9 at 3). Schreiner responded to Serge's email within minutes, indicating that Serge wanted to place four orders that they would "stagger ship," with the first shipment being sent "ASAP," and the breakdown would be 750 small, 1,500 medium, and 250 large shoulder pads. *See id.* at ¶ 13 (citing Dkt. No. 56-9 at 2). Serge responded to Schreiner's email one week later on March 8, asking "What do we have ready to ship today?  I need to update my customers ASAP.  Lacrosse is starting in the north east [sic] this week.  Thanks." *Id.* at ¶ 14 (citing Dkt. No. 56-9 at 2).

**C.     Defendant's Position**

According to Defendant, during the February 28, 2022 meeting, Serge expressed to Dougherty and Schreiner that Plaintiff had some interest in purchasing Defendant's lacrosse shoulder pads for resale to Defendant's customers, but contends that they never reached an agreement regarding the necessary specifics as to several material issues. *See* Dkt. No. 57-1 at ¶ 21. Specifically, Defendant contends there was no agreement as to quantity and sizes, unit prices and volume discounts, payment terms, and delivery terms and dates. *See id.* at ¶¶ 22, 25-37.

Following the meeting, on March 1, 2022, at 3:30 p.m., Cunningham sent Serge an email (copied to Dougherty and Schreiner) providing him with a price **quote** for "8,000 units" of both lacrosse shoulder pads and goalie chest protectors, FOB Glen Mills, Pennsylvania. *See id.* at ¶ 40; *see also* Dkt. No. 56-9 at 3. The email stated, "[w]hen ordering, please specify sizing." Dkt. No. 56-9 at 3. It also stated, "[p]ayment terms, 60 Days (subject to credit approval)" with "[s]hip date commencing 3/10 to 3/21." *Id.* Serge contends that he understood this email to be Plaintiff's **offer** to sell Defendant 8,000 lacrosse shoulder pads on the terms set forth therein and that if Defendant wished to accept the offer, it would do so by submitting a purchase order specifying the quantity and sizes of the pads. *See* Dkt. No. 57-1 at ¶ 41. Plaintiff further contends that Cunningham admitted that neither Serge nor any other representative of Defendant responded to his email stating in words or substance that Defendant accepted Plaintiff's quote. *See* Dkt. No. 57-4 at 66. Defendant argues that, unbeknownst to it, Plaintiff's management (Cunningham and Vito) apparently unilaterally considered this email to be their confirmation of a verbal purchase order/agreement Serge reached on behalf of Defendant with Dougherty and Schreiner during the February 28 meeting. *See* Dkt. No. 57-1 at ¶ 43; *see also* Dkt. No. 57-4 at 64-82; Dkt. No. 57-6 at 36, 42, 62.

Defendant alleges that, with respect to the quantity of pads offered in the March 1, 2022 quote, it had no desire to purchase 8,000 units from Plaintiff, since Defendant is a relatively small business that is principally engaged in screen printing. *See* Dkt. No. 57-1 at ¶ 45. Cunningham testified that Serge told Schreiner and Dougherty at their February 22 meeting that Defendant "would take every pad we had, everyone of them," and that Dougherty and Cunningham unilaterally decided to use the 8,000 figure as this would be an "appropriate amount to satisfy the request to take everything." Dkt. No. 57-4 at 68-70. Again, Cunningham admitted that Serge

5

never confirmed in writing that Defendant would commit to purchase 8,000 shoulder pads from Plaintiff. *See id.* at 73.

As to the unit prices offered, Serge concedes that $75.00 per player pad and $80.00 per goalie pad was reasonable for small volume orders, but that he would have demanded a substantial volume discount for 8,000 pads if Defendant were to purchase 8,000 pads at one time. *See* Dkt. No. 57-1 at ¶ 48. Moreover, Cunningham testified that Serge told Schreiner and Dougherty at their February 28, 2022 meeting, that Defendant would want payment terms at a minimum of net 120 days. *See* Dkt. No. 57-4 at 81. Cunningham further testified that he used net 60 days because Serge reached an agreement with Dougherty on this issue. *See id.* at 82. However, Defendant notes that Dougherty testified that he could not recall what was discussed during the meeting regarding payment terms and it was not something he negotiated with Serge. *See* Dkt. No. 57-5 at 36-38, 40 & 55. Cunningham admitted that Serge never confirmed in writing that Defendant would agree to payment terms of net 60 days. *See* Dkt. No. 57-4 at 82.

Finally, Defendant contends that the proposed shipping dates of between March 10 and 21, 2022, were not discussed at the February 28 meeting. *See* Dkt. No. 57-1 at ¶ 57. Defendant notes that shipping such a large volume of shoulder pads to its Albany facilities would have created two major issues, which could not be accomplished in the proposed timeframe: (1) Serge would have needed to arrange warehouse space to store 8,000 pads; and (2) he would have to decide on the sizes to be ordered. *See id.* Defendant argues that, as with all of the terms set forth in Cunningham's March 1, 2022 email, they were not confirming something Serge had verbally agreed to, but, rather they were setting forth Plaintiff's proposal. *See id.* at ¶¶ 57-58.

**D.    Fulfillment of Back Order with Plaintiff's Pads**

After the February 28 meeting, Serge contacted customers who had placed orders for lacrosse shoulder pads with Defendant that had been back ordered. *See* Dkt. No. 57-1 at ¶ 62. During March 2022, Defendant provided purchase orders to Plaintiff ordering 127 shoulder pads to be directly shipped to the following four customers: (1) Sleepy Hollow High School – 45 pads; (2) the Colorado School of Mines – 18 pads; (3) Lafayette High School – 40 pads; and (4) the Jordan-Elbridge School – 24 pads. *See id.* at ¶¶ 64-76. Plaintiff shipped the shoulder pads for each of the four drop shipment orders that Defendant placed, but over-charged Defendant for the number of pads delivered, charging Defendant for an additional ten shoulder pads. *See id.* at ¶¶ 70, 76. In placing these orders, Defendant agreed to Plaintiff's quoted unit price of $75.00 per pad, payment terms of net 60 days, and its delivery terms of FOB Glen Mills, Pennsylvania for each drop shipment order. *See id.* at ¶ 77. Defendant's agreement to these terms was reflected in distinct written purchase orders set to Plaintiff via email.

E.  **Plaintiff Requested Defendant's Credit Application**

On March 14, 2022, at 11:59 p.m., Cunningham sent Serge an email attaching Plaintiff's credit application. *See* Dkt. No. 57-1 at ¶ 80. Serge contends that he did not complete or return it to Plaintiff because he was not certain that Defendant wanted any more shoulder pads after the drop shipment orders were fulfilled. *See id.* As such, he did not provide Defendant's credit references or bank information. *See id.*

On March 15, 2022, at 12:30 a.m., Cunningham sent Serge another email attaching Plaintiff's credit application. *See id.* at ¶ 81. Again, Serge did not complete or return it to Plaintiff. *See id.* Cunningham conceded that Plaintiff requested but never received the credit application for Defendant. *See* Dkt. No. 57-4 at 82, 90, 93-94. Other than the drop-shipment purchase orders, Defendant never sent Plaintiff another purchase order specifying quantities

7

and/or sizes of lacrosse shoulder pads it wished to purchase in response Plaintiff's March 1, 2022 quote. *See id.* at ¶ 83.

F.   **Delivery of 6,220 Should Pads to Defendant**

Despite the absence of a formal written purchase order or completed credit application, between March 16 and 21, 2022, Defendant received from Plaintiff the following shipments: (1) 88 cartons containing 1,760 small shoulder pads; (2) 59 cartons containing 590 medium shoulder pads; and (3) 27 cartons containing 270 large should pads, totaling 2,620 pads. *See* Dkt. No. 57-1 at ¶ 85. Following this delivery, Serge repeatedly contacted Plaintiff by phone and text message to discuss the shipment. *See id.* at ¶ 86.

On March 23, 2022, Cunningham and Dougherty came to Defendant's office to discuss the shipments with Serge. *See id.* at ¶ 87; *see also* Dkt. No. 57-4 at 73, 141-44. Serge alleges that he was not happy at that time that he had received such a large shipment of shoulder pads that he claims were not ordered and were taking up Defendant's limited warehouse space. *See id.* at ¶ 88. During this meeting, Cunningham observed that the shoulder pads were unpacked and still in their shipping cartons on pallets. *See* Dkt. No. 57-4 at 142. During this meeting, Serge asked Cunningham to suspend further shipments to provide time to sell the goods that had already been delivered before Defendant received more. *See* Dkt. No. 57-7 at ¶ 19.

Based on their discussion, on March 24, 2022, at 5:33 p.m., Cunningham sent Serge an email and attached a revised "purchase quote" for 6,000 lacrosse shoulder pads. The email containing the "purchase quote details" stated as follows:

> Dear Mr. Jeff Serge,
>
> As promised, please find your purchase **quote** details here.

> Please issue a purchase order from Mercury/approve this quote and issue a purchase order number email back to cunningham@unequal.com – Kyle.
>
> ------------------ Estimate Summary ------------------
> Estimate #: 7475
> Estimate Date: 03/24/2022
> **Expiration Date**: 04/04/2022
> Total: $450,000.00

Dkt. No. 56-12 at 2 (emphasis added). Attached to the email was formal quote, with an "**expiration date**" of April 4, 2022, which Serge never signed or returned to Plaintiff. *See id.* at 3. Notably, this revised purchase quote no longer referenced the net 60 day payment terms. *See id.*

Despite not receiving the signed revised purchase order from Serge, Defendant received the following additional shipments of lacrosse shoulder pads: (1) 1,080 medium pads on March 25, 2022; (2) 1,440 medium pads that were shipped on March 25, 2022; and (3) 1,080 large pads that were shipped on March 28, 2022. *See* Dkt. No. 56-11 at 2. By the end of March 2022, Plaintiff delivered 6,220 shoulder pads to Defendant without any credit application, signed estimate as requested, or a purchase order specifying the quantity, sizes, shipping terms or payment terms.

**G.    Defendant has Continued to Store the Pads**

Upon receipt of the 6,220 pads, Serge decided that the only way to rectify this situation was to keep the pads in their shipping cartons with the hope that Plaintiff would address the situation by accepting a return of some or all of the pads. *See* Dkt. No. 57-1 at ¶ 95. His

instructions to Defendant's employees was to keep the pads in their cartons and be ready to return them. *See id.*[2]

### H.     Collection Efforts and this Litigation

On May 17, 2022, Cunningham sent Serge an email demanding payment of $197,626.55, and enclosing Plaintiff's wire transfer payment instructions. *See* Dkt. No. 56-30 at 2. Serge claims that he spoke with Cunningham and objected to the invoice, which Defendant did not pay. *See* Dkt. No. 57-1 at ¶ 96.

On May 19, 2022, Serge received an email from Vito demanding payment of $197,626.55, plus interest at a rate of 1.5% per month, and threatening litigation. *See* Dkt. No. 56-30 at 6. On May 20, 2022, Serge received another email from Vito again demanding payment. *See id.* at 12.

On May 23, 2022, Vito sent Serge an email rejecting Defendant's offer to return the shoulder pads that were delivered without a formal purchase order. *See* Dkt. No. 57-1 at ¶ 99. Vito asserted that as of May 29, 2022, the sum of $480,665.94 would be due Plaintiff. *See* Dkt. No. 56-30 at 13.

On February 27, 2023, Plaintiff commenced this action, asserting four causes of action sounding in breach of contract, account stated, unjust enrichment, and conversion. *See* Dkt. No. 1.[3]

### III. DISCUSSION

---

[2] In addition to the drop shipped pads, Defendant has sold a total of 850 pads to Dougherty. Defendant notes that it has offered to pay Plaintiff for these pads as part of a global settlement, but it has refused to settle. *See* Dkt. No. 57 at 20 n.3.

[3] On June 3, 2022, Plaintiff commenced an action against Defendant in the United States District Court for the Eastern District of Pennsylvania. On January 19, 2023, the court dismissed Plaintiff's complaint for lack of personal jurisdiction. *See Unequal Technologies Co. v. Mercury Screen Printing*, No. 22-cv-2192, 2023 WL 349249 (E.D. Pa. Jan. 19, 2023).

A. **Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

B. **Breach of Contract**

"Under New York law, the elements of a claim for breach of contract are: '[1] the existence of a contract, [2] the plaintiff's performance thereunder, [3] the defendant's breach thereof, and [4] resulting damages.'" *Alpha Capital Anstalt v. Real Goods Solar, Inc.*, 311 F. Supp. 3d 623, 628 (S.D.N.Y. 2018) (quoting *Harris v. Seward Park Hous. Corp.*, 79 A.D.3d 425,

11

426 (1st Dep't 2010)).  "'To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound.'" *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (quoting *Louros v. Cyr*, 175 F. Supp. 2d 497, 512 n.5 (S.D.N.Y. 2001)).

"To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Term. Corp. v. N.Y.S. Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999) (citation omitted).  "This requirement assures that the judiciary can give teeth to the parties' mutually agreed terms and conditions when one party seeks to uphold them against the other.  Generally, courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Id.*

"The first step then is to determine whether there is a sufficiently definite offer such that its unequivocal acceptance will give rise to an enforceable contract." *Id.* at 589-90 (citation omitted).  As the New York State Court of Appeals has emphasized, "'definiteness as to material matters is of the very essence of contract law.  Impenetrable vagueness and uncertainty will not do.'" *Id.* at 590 (quotation omitted).  "Of course, not all terms of a contract need be fixed with absolute certainty; 'at some point virtually every agreement can be said to have a degree of indefiniteness ...  While there must be a manifestation of mutual assent to essential terms, parties also should be held to their promises and courts should not be 'pedantic or meticulous' in interpreting contract expressions.'" *Id.* (quotation omitted).

"'The manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract.'" *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427-28 (2d Cir. 2004) (quoting *Maffea v. Ippolito*, 247 A.D.2d 366, 367 (2d

Dep't 1998)) (other citations omitted). "Generally, 'in order for an acceptance to be effective, it must comply with the terms of the offer and be clear, unambiguous and unequivocal.'" *Trademark Properties Inc. v. A&E Television Networks*, 422 Fed. Appx. 199, 204-05 (4th Cir. 2011) (quoting *King v. King*, 208 A.D.2d 1143, 1144 (3d Dep't 1994)); *see also* 2 Williston on Contracts § 6:10 (4th ed. 2007) ("As a general principle, at common law an acceptance, in order to be effective, must be positive and unambiguous"). When an offeree communicates "an acceptance [that] is ambiguous or equivocal—that is, an acceptance that a reasonable person could view as assent, rejection, or an invitation to bargain further ... it is the offeror's reaction to that ambiguous acceptance that controls whether the parties have entered into a contract." *International Business Machines Corp. v. Johnson*, 629 F. Supp. 2d 321, 330 (S.D.N.Y. 2009) (citing *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008)).

> "[B]y their nature, equivocal responses are capable of being understood either as the offeree apparently intends them ... or as the offeror might apparently understand them.... To the extent that either interpretation is plausible, the offeree can hardly complain if the offeror understands the communication as the offeree apparently intended; and the offeror who reasonably treats an equivocal response as an acceptance may hold the offeree to a contract. This rule ... operates to protect the offeror who acts reasonably in relation to what it supposes is intended to operate as an acceptance, yet provides the offeror with significant flexibility as the master of the offer. In short, how the offeror treats the offeree's language will, assuming that treating the language either as language of acceptance or treating it as language requiring further discussion is reasonable, determine the language's effect."

*Id.* at 330-31 (quoting 2 Williston on Contracts § 6:10 (4th ed. 2004)). "So long as the offeror's interpretation of the offeree's equivocal acceptance is plausible or reasonable, New York courts will find a contract has been formed." *Trademark Properties Inc.*, 422 Fed. Appx. at 205. "In other words, where an offeree communicates an ambiguous acceptance, the offeree must assume

13

the risk of the offeror's misinterpretation." *Johnson*, 629 F. Supp. 2d at 331 (citing *Russell v. Raynes Assocs. Ltd. Partnership*, 166 A.D.2d 6, 14 (1st Dep't 1991)).

### 1. Drop Shipments to Fulfill Back Orders

As discussed above, after the February 28 meeting, Serge contacted customers who had placed orders for lacrosse shoulder pads with Defendant that had been back ordered due to supply shortages. *See* Dkt. No. 57-1 at ¶ 62. During March 2022, Defendant provided purchase orders to Plaintiff ordering 127 shoulder pads to be directly shipped to the following four customers: (1) Sleepy Hollow High School – 45 pads; (2) the Colorado School of Mines – 18 pads; (3) Lafayette High School – 40 pads; and (4) the Jordan-Elbridge School – 24 pads. *See id.* at ¶¶ 64-76. Plaintiff shipped the shoulder pads for each of the four drop shipment orders that Defendant placed, but over-charged Defendant for the number of pads delivered, charging Defendant for an additional ten shoulder pads. *See id.* at ¶¶ 70, 76. In placing these orders, Defendant agreed to Plaintiff's quoted unit price of $75.00 per pad, payment terms of net 60 days, and its delivery terms of FOB Glen Mills, Pennsylvania for each drop shipment order. *See id.* at ¶ 77. Defendant's agreement to these terms was reflected in distinct written purchase orders set to Plaintiff via email, and these purchase orders specified the sizes to be sent to each school.

There is no dispute that Defendant ordered these 127 shoulder pads, as reflected in the emailed purchase orders, and agreed to the terms quoted by Plaintiff. These shoulder pads were delivered to the customers as directed by Defendant and Defendant was billed for the orders. In fact, Serge acknowledges that Defendant owes Plaintiff payment for the 127 lacrosse pads drop shipped to Defendant's customers. *See* Dkt. No. 56-5 at 16-17.

Accordingly, the Court finds that Plaintiff is entitled to summary judgment as to the 127 drop-shipped lacrosse pads.

### *2. The Remaining 6,220 Pads Delivered to Defendant*

Unlike the transactions for the 127 drop-shipped shoulder pads, the transactions underlying the delivery of the remaining 6,220 are considerably murkier to say the least. In its motion for summary judgment, Plaintiff contends that the undisputed facts show that each of the elements for its breach of contact claim have been met: "Unequal offered to sell lacrosse pads to Mercury, Mercury accepted, the parties agreed to all essential terms, Unequal delivered the goods, but Mercury breached by failing to pay." Dkt. No. 56-1 at 12. Defendant, however, contends that Plaintiff's motion on this claim must be denied because "it cannot be established, as a matter of law, that a contract was formed between Unequal and Mercury which committed Mercury to purchase from Unequal 6,220 shoulder pads at the unit price of $75.00 with payment terms of net 60 days and delivery terms of FOB Glen Mills, Pennsylvania, and an interest rate due on past due balances at 1.5% per month." Dkt. No. 57 at 24. The Court agrees with Defendant that summary judgment as to this aspect of Plaintiff's breach of contract claim must be denied.

As Defendant notes, there was no contract, verbal or otherwise, formed between Plaintiff and Defendant during the initial meeting on February 28, 2022. This fact was made clear through Serge's affidavit and the sworn testimony of Schreiner and Dougherty. This sworn testimony establishes that there was no meeting of the minds on the essential elements needed to form a contract. *See* Dkt. No. 56-2 at ¶ 8 (alleging that "[a]n order for 8,000 shoulder pads was nearly finalized during the meeting").

On March 1, 2022, Plaintiff, through Cunningham, made an offer to sell Defendant 8,000 should pads at the unit price of $75.00 with payment terms of net "60 Days (subject to credit approval)," ship dates commencing "3/10 to 3/21," and delivery terms of FOB Glen Mills, Pennsylvania. *See* Dkt. No. 56-9 at 3. The word "quote" is used in both the subject line of the

email and in the body as well, making the quote conditional on Defendant's credit approval and expressly requiring that there be a subsequent acceptance by Defendant when it stated "[w]hen ordering, please specify sizing." *Id.* In his testimony, Cunningham admitted that neither Serge nor any other representative of Defendant responded to this email stating that Defendant accepted the offer. *See* Dkt. No. 57-4 at 65-67. Rather, Cunningham testified that he believed that Serge had verbally accepted the "quote," referring to the discussions that occurred during the February 28 meeting. *See id.*

Later, on March 1, 2022, Schreiner emailed Cunningham and Serge a modified order, requesting a "breakdown from the 4 orders [Defendant] would like to stagger ship." Dkt. No. 56-9 at 2. Schreiner stated that Defendant wanted 750 small, 1,500 medium, and 250 large and he requested that Cunningham send Defendant "a new Quote per breakdown above." *Id.*; *see also* Dkt. No. 57-1 at ¶ 60. Cunningham, however, never sent Defendant a new revised quote as instructed, instead believing that a binding agreement was reached when Serge first stated at the February 28 meeting that he "wanted them all." *See* Dkt. No. 57-4 at 85-87.

Then, on March 24, 2022, Cunningham made a revised offer to sell Defendant 6,000 lacrosse shoulder pads (1,860 small, 3,170 medium, and 970 large) for a price of $450,000, which no longer referenced the net 60 day payment terms and provides no indication of an interest rate to be paid on past due sums. *See* Dkt. No. 56-12 at 2-3. Cunningham requested that Serge sign the quote and return it together with a purchase order from Defendant to signify its acceptance. *See id.* The revised quote provided that it had an "expiration date" of April 4, 2022. *See id.* at 3. Serge neither signed the revised quote nor prepared a purchase order. *See* Dkt. No. 57-1 at ¶ 89.

The undisputed facts clearly demonstrate that Defendant was interested in potentially purchasing lacrosse shoulder pads from Plaintiff but that, by the time Plaintiff started sending

16

shipments to Plaintiff, the parties had yet to formalize any agreement concerning the price of the pads, the quantity to be purchased (including the size breakdowns), when the shipments would occur, and what the payment terms would be. Despite receiving no signed purchase order or credit application, Plaintiff began shipping pads to Defendant in quantities that were never agreed upon. *See* Dkt. No. 57-4 at 82-83.[4] Moreover, although Serge mentioned at the February 28 meeting that he wanted all of the pads Plaintiff had available, the evidence makes clear that no consensus was ever reached as to the ultimate number of pads to be purchased. Rather, Cunningham initially thought that 10,000 pads would be sufficient to satisfy this request, but then revised the number to 8,000, without receiving any input from Serge. *See* Dkt. No. 57-4 at 67-69.

While the parties agree that a total of 6,220 lacrosse shoulder pads were delivered to Defendant at its Albany warehouse, they agree on little else. Given the informality of the discussions between the parties and the considerable discrepancies in testimony and evidence submitted, the Court finds that Plaintiff's motion for summary judgment on its breach of contract claim regarding the 6,220 pads must be denied.

**C.    Account Stated**

To prevail on a claim for account stated under New York law, the plaintiff must establish the following: "'(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor

---

[4] The Court notes that Plaintiff's position is considerably stronger as it relates to the first several shipments that were delivered on March 16, 18, and 21, 2022, which included a total of 2,620 units. This is because it was not until these shipments were made that Serge truly started to express concern over the quantity of lacrosse shoulder pads he was receiving. However, even these shipments are of concern, considering that the shipments consisted of 1,760 small pads, and 270 large pads, while previous correspondence made clear that medium pads were what Serge was seeking the largest quantity of. However, Plaintiff has not sought summary judgment as to this limited subset of the pads delivered. Moreover, these transactions suffer from the same issues that prevent summary judgment as set forth above.

promised to pay the amount stated.'" *Consol. Energy Design, Inc. v. Princeton Club of N.Y.*, 590 Fed. Appx. 115, 116 (2d Cir. 2015) (quoting *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009)). An account stated claim requires "'an agreement between the parties to an account based upon prior transactions between them. ...'" *LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999) (quotation omitted). "Such an agreement may be implied if 'a party receiving a statement of account keeps it without objecting to it within a reasonable time' or 'if the debtor makes partial payment.'" *Id.* (quotation and other citations omitted).[5]

In the present matter, the Court finds that this aspect of Plaintiff's motion must be denied. Initially, the Court notes that there were no prior transactions between Plaintiff and Defendant. Rather, the February 28 meeting was the first meeting between these parties and they had never previously engaged in business together. Further, questions of fact exist as to whether Defendant promised to pay the amount stated. For example, according to Serge, at the March 23, 2022, meeting with Cunningham and Dougherty, Serge expressed his dissatisfaction with Plaintiff for sending him such a large quantity of lacrosse shoulder pads that he did not order and which were taking up Defendant's limited warehouse space. *See* Dkt. No. 57-1 at ¶ 88. These shipments were observed to be unpacked in the shipping cartons sitting on pallets in the warehouse. *See id.*; *see also* Dkt. No. 57-4 at 140-42. Thereafter, Serge continued to contact Plaintiff to express his concerns and dissatisfaction that he was continuing to receive large shipments of shoulder pads

---

[5] Since the Court has already granted Plaintiff's motion for summary judgment as to the breach of contract claim regarding the 127 lacrosse pads that were drop shipped to Defendant's customers, to the extent that the account stated claim seeks payment for those 127 pads, it is denied as duplicative. *See Kaiburr Systems LLC v. Tower 05, Inc.*, No. 1:22-cv-399, 2023 WL 7183183, *2 (N.D.N.Y. Nov. 1, 2023) (holding that an account stated claim is duplicative of a breach of contract claim where the plaintiff seeks identical damages under both claims) (citations omitted).

that he contends were not ordered.[6] While Serge repeatedly attempted to work with Plaintiff to address the situation, including by offering to sell the shoulder pads over time, it is clear that objection was made to the amount Plaintiff claims was owed.

Accordingly, the Court denies this aspect of Plaintiff's motion for summary judgment.

**D.   Defendant's Counterclaim**

In its motion, Plaintiff seeks summary judgment as to Defendant's counterclaim brought pursuant to New York General Obligations Law § 5-332. *See* Dkt. No. 56-1 at 15-16.

General Obligations Law § 5-332 allows a party, under certain circumstances, to retain goods shipped to them whose delivery was unsolicited from the shipping party. *See* N.Y. Gen. Oblig. Law § 5-332. As relevant here, Section 5-332 provides as follows:

> No person, firm, partnership, association or corporation, or agent or employee thereof, shall, in any manner, or by any means, offer for sale goods, wares, or merchandise, where the offer includes the voluntary and unsolicited sending of such goods, wares, or merchandise not actually ordered or requested by the recipient, either orally or in writing. The receipt of any such goods, wares, or merchandise shall for all purposes be deemed an unconditional gift to the recipient who may use or dispose of such goods, wares, or merchandise in any manner he sees fit without any obligation on his part to the sender.

*Id.* § 5-332(1).

In the present matter, the Court finds that this aspect of Plaintiff's motion must be granted in part and denied in part. Because the Court has already found that Plaintiff is entitled to summary judgment as to its breach of contract claim relating to the drop shipment orders, it necessarily follows that Defendant cannot succeed on this counterclaim as to those orders. As to

---

[6] In its motion, Plaintiff almost exclusively cites to facts establishing that Defendant accepted the invoices as to the drop shipment orders, but otherwise relies on facts clearly in dispute to establish this element as to the remaining shipments of lacrosse pads. *See* Dkt. No. 56-1 at 14.

the remaining shoulder pads at issue, the Court finds that issues of fact preclude granting Plaintiff's motion for summary judgment. Although the Court is skeptical of the viability of this claim at trial given the discussions between the parties prior to the shipment of the lacrosse shoulder pads, it nevertheless finds that summary judgment is inappropriate.

Accordingly, this aspect of Plaintiff's motion for summary judgment is granted in part and denied in part.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgment (Dkt. No. 56) is **GRANTED in part and DENIED in part**;[7] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 13, 2025
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[7] Plaintiff's motion for summary judgment is granted as to its breach of contract claim relating to the 127 drop-shipped pads and insofar as Defendant's counterclaim relates to the same drop-shipped pads. The motion is otherwise denied in all respects.